**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

GREG E. LINDBERG,

          Plaintiff,

    - against -

RONALD CIEUTAT, TODD VEREEN, DAVID
GLENN FINNEGAN, FLOYD SLAY, JR.,
TIMOTHY ANDREWS, TYLA FOWLKES,
DEBRA LITTLE, THOMAS WILLIAMS, ERIN
ANDERSON, JAN WHEELER, EUGENE
DREHER, IV, NANCY DREHER, JOSEPH
MOORE, PHILLIP EPSTEIN, MICHAEL
DANDURAND, WILLIAM MCFARLAND,
ANGELA CLARK, CAROL REED, and
MICHAEL RUDGE,

          Defendants.

Civil Action No. 1:25cv1000 (ER)

**DEFENDANT RONALD CIEUTAT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ...........................................................................................................................2

ARGUMENT .................................................................................................................................5

    I.    None of the Defendants has been properly served...................................................6

        A.    Alabama law does not permit service by the methods used. .......................7

        B.    The requirements for the other Federal methods of service were not properly met ...................................................................................................9

        C.    None of the other defendants have been properly served. ...........................9

    II.    The Promissory Note cannot be arbitrated because it has been fully adjudicated.10

    III.    Lindberg cannot compel the Next Step Case to arbitration ..................................11

        A.    Lindberg is not a party to the Next Step Case and none of the parties in the Next Step Case have invoked the arbitration provision...................................12

        B.    The Next Step Case is not a claim subject to arbitration because it cannot result in an offset....................................................................................13

        C.    This Court lacks jurisdiction over the necessary parties to compel arbitration ....................................................................................................14

    IV.    It is premature to compel the issue of offset to arbitration because there is no judgment in the Next Step Case...........................................................................15

CONCLUSION.............................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Aspex Eyewear, Inc. v. Clariti Eyewear,*
    531 F. Supp. 2d 620 (S.D.N.Y. 2008) ................................................................5

*Bell Atl. Corp v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................5

*Caley v. Gulfstream Aerospace Corp.,*
    333 F. Supp. 2d 1367 (N.D. Ga. 2004) ...........................................................12

*Com-Tech Assocs. v. Computer Assocs. Int'l,*
    938 F.2d 1574 (2d Cir. 1991) ..........................................................................10

*Eli Global, LLC v. Cieutat,*
    2023 Ala. LEXIS 134 (Ala. Dec. 1, 2023)............................................. 3, 10-11

*Gaudin v. Collateral Agency,*
    624 So. 2d 631 (Ala. Civ. App. 1993)...............................................................8

*Hinds Cnty., Miss. v. Wachovia Bank N.A.,*
    953 F. Supp. 2d 495, 496 n.1 (S.D.N.Y. 2013) .................................................5

*In re Boon Glob., Ltd.,*
    923 F.3d 643 (9th Cir. 2019) ...........................................................................15

*Jackson v. Cty. of Nassau,*
    339 F. Supp. 2d 473 (E.D.N.Y. 2004) .............................................................11

*Kawasaki Heavy Indus. v. Bombardier Rec. Prods.,*
    660 F.3d 988 (7th Cir. 2011) ...........................................................................12

*Kramer v. Hammond,*
    943 F.2d 176 (2d Cir. 1991) ............................................................................10

*Mathias v. Homestreet Bank,*
    2021 U.S. Dist. LEXIS 156985 (D. Haw. July 29, 2021)...................................9

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,*
    815 F. Supp. 2d 679 (S.D.N.Y. 2011) ..............................................................5

*Patane v. Clark,*
    508 F.3d 106 (2d Cir. 2007) ..............................................................................5

*Rush v. Oppenheimer & Co.,*
    779 F.2d 885 (2d Cir. 1985) ..................................................................................10

*Thau v. Dewitt Rehab,*
    2022 N.Y. Misc. LEXIS 43870 (Sup. Ct. July 28, 2022)...................................13

*Tuebor Reit Sub LLC v. Paul,*
    2020 U.S. Dist. LEXIS 150145 (S.D.N.Y. Aug. 19, 2020)................................11

*Westinghouse Credit Corp. v. D'Urso,*
    371 F.3d 96 (2d Cir. 2004) ...............................................................................11

*Yonkers v. Cassidy,*
    44 N.Y.2d 784 (Ct. App. 1978) .........................................................................13

*Zhu Jun v. Bank of Am., N.A.,*
    2024 U.S. LEXIS 31926 (2d Cir. Dec. 17, 2024) ..............................................9

<u>STATUTES AND RULES</u>

Alabama Rules of Civil Procedure, Rule 4.............................................................. 7-10

Federal Rules of Civil Procedure, Rule 4 ............................................................ 7, 9-10

Federal Rules of Civil Procedure, Rule 12 ...............................................................6

## PRELIMINARY STATEMENT

The Plaintiff's Complaint is difficult to understand and the history between the parties is lengthy and complex. However, it appears that the Plaintiff, Greg Lindberg ("Lindberg")[1] is asking this Court to do one of three things—each of which lacks merit.

First, Lindberg may be asking this Court to order arbitration of amounts owed on a Promissory Note. If so, the Promissory Note at issue has been fully adjudicated and any right to arbitration has been waived. This Court may not order the completed litigation to arbitration.

Second, Lindberg may be asking this Court to order to arbitration a pending litigation in the Circuit Court of Mobile County, Alabama (the "Next Step Case"). The claims and parties in the pending litigation in Mobile are not subject to any arbitration provisions. Lindberg is not a party to the Next Step Case. The reason Lindberg wants to compel arbitration of the Next Step Case is that Lindberg wrongly asserts the judgment on the Note is entitled to be offset if the Next Step Case results in a judgment against the Respondent in that action (and one of the Defendants in this action), Ronald Cieutat ("Mr. Cieutat"). Lindberg relies on an offset provision in the Note. However, the offset provision in the Note only permits offset of amounts Mr. Cieutat owes to HPCSP Investments, LLC. That entity is not a plaintiff in the Next Step Case and will never be entitled to any judgment in that case (even assuming for the sake of argument that the claims against Mr. Cieutat in that action had any merit, which they do not). Thus, there can never be the offset that Lindberg seeks. This Court cannot compel arbitration for a claim that is neither subject to an arbitration provision nor to offset under the terms of the Note, much less interfere in any way

---

[1] Lindberg is in jail in North Carolina awaiting sentencing on two criminal cases. The first involves bribing of the North Carolina insurance commissioner, of which a jury has twice found Lindberg guilty. *United States v. Greg Lindberg et al.*, Western District of North Carolina, Case Number 5:19-cr-22. Lindberg pled guilty to securities fraud in the other case. *United States v. Greg Lindberg*, Western District of North Carolina, Case Number 3:23-cr-48. Lindberg is representing himself in this matter, from his jail cell.

with the ongoing litigation of the Next Step Case (which may or may not be a part of Lindberg's requested relief) to determine if he is entitled to an offset of any yet-to-be-determined award (if any) in that case.

Finally, it may be that, irrespective of whether the Next Step Case continues to be litigated in Alabama State Court, Lindberg is asking this Court to compel to arbitration in the meantime as to whether he is entitled to an offset of the amounts ultimately owed in the Next Step Case (if any). As mentioned above, the Note will never be subject to offset by any judgment in the Next Step Case because HPCSP Investments, LLC is not a party to the Next Step Case. Even if the Note could be offset by a judgment in the Next Step Case, the Next Step Case is still pending. There has been no adjudication of the case and no judgment entered against Lindberg. Therefore, it is premature to order that issue to arbitration.

## BACKGROUND

In 2018, the Sellers[2] sold their various ownership interests in HPC, LLC, Hemophilia Preferred Care of Memphis, Inc., HPC Biologicals, Inc., HPCNC, Inc., HPC Specialty RX West Virginia, Inc., HPC Specialty Rx of Kansas, Inc., Hemophilia Preferred Care of Oklahoma, Inc., HPC Specialty Rx Reed, Inc. and Hemophilia Preferred Care of Mississippi, Inc. ("Acquired Entities") to HPCSP Investments, LLC ("HPCSP Investments") pursuant to the Equity Purchase Agreement dated January 19, 2018 (the "Equity Purchase Agreement"). (ECF No. 1, p. 16). As part of the consideration[3] for the purchase of the ownership interests from the Sellers, a separate

---

[2] The Sellers were twenty-three (23) owners (the "Sellers") named in the Equity Purchase Agreement. (ECF No. 1-2, pp. 25-47). Each of the Sellers is named as a Defendant in this matter, but service has only been attempted on Mr. Cieutat. (*Compare* Compl. at 1, *with* ECF No. 1-2, pp. 25-47). Together, the Sellers conveyed all of their ownership interests in the Acquired Entities to HPCSP Investments. (ECF No. 1, p. 16).

[3] The transaction was complex and involved several types of consideration to be paid at different times, including a cash payment at the closing, the Note and an earn-out agreement (the "Equity Equivalence Agreement"). (ECF No. 1, pp. 9-60; ECF No. 1-2, pp. 1-51). The Equity Equivalence Agreement earn-out was also never paid and litigation

entity, Eli Global, LLC ("Eli Global" or "Maker") executed a promissory note (the "Note") in favor of the Sellers.[4]

Eli Global defaulted on the Note, and the Sellers were awarded a judgment on the balance owed on the Note.  *See Eli Global, LLC v. Cieutat*, 2023 Ala. LEXIS 134 (Ala. Dec. 1, 2023).  The Note was **only** between Eli Global and the Sellers.  (ECF No. 1-2, p. 53).  The facts related to the adjudication of the Note are thoroughly detailed in *Eli Global, LLC v. Cieutat*, 2023 Ala. LEXIS 134 (Ala. Dec. 1, 2023).  On May 6, 2020, after the Note was in default, the Payees on the Note - the Sellers - sued Eli Global in the Circuit Court of Mobile County, Alabama (the "Note Case"). *Id.* at *11-12.  Notably, no party sought to arbitrate adjudication of the Note, and the court resolved the Note Case in the Sellers's favor.  *Id.*  Specifically, on September 21, 2022, the Mobile County Circuit Court entered summary judgment against Eli Global in an amount over $11,000,000, which, with interest, now exceeds $12,000,000.[5]  *Id.* at *18.  Eli Global appealed the judgment entered against it, but the Alabama Supreme Court affirmed the trial court's summary judgment. *Id.* at *62.  None of the judgment has been collected by the Sellers.

In a separate matter, in May 2024, some of the Acquired Entities (but not all of them) filed

---

is pending in Mobile County, Alabama for the Sellers to recover amounts owed to them, in addition to the Note, under the Equity Equivalence Agreement.

[4] The Sellers' Representative was identified as Mr. Cieutat in the Equity Purchase Agreement.  (ECF No. 1, p.16). The Sellers' Representative was authorized to "act as the agent of Sellers for the purpose of the Transaction Documents." (ECF No. 1-2, p. 11).  Importantly, the Seller's Representative was authorized to "receive from Buyer any and all amounts payable by Buyer to Sellers under . . . the Note . . . and to allocate and distribute such payments to Sellers in such amounts, at such times and on such terms as may be separately agreed by Sellers and Sellers' Representative." *Id.* at 12, §8.3.  In short, the Sellers' Representative acted on behalf of Sellers.  *Id.* at 25-47.  Thus, the Note referred to in the Petition is made between Eli Global and the Sellers.

[5] Lindberg also owes the judgment on the Note, jointly and severally with Eli Global, because he was the guarantor of the Note, but Lindberg's Petition in this Court omits any mention of his guaranty and instead only states that it is the Note that is due to be offset.  He is not a party to the Note and the actual Maker of the Note – Eli Global – has not been made a party to this case.  Moreover, Lindberg does not appear to be requesting arbitration in his capacity as a guarantor as he has failed to even allege that he is a guarantor.  Rather, he appears to be asking for relief for Eli Global, a non-party.

a lawsuit against Mr. Cieutat and others (the aforementioned "Next Step Case").  (ECF No. 1-7, p. 35).  The plaintiffs in the Next Step Case are HPC, LLC, Hemophilia Preferred Care of Memphis, Inc., HPCNC, Inc., HPC Specialty Rx West Virginia and HPC Biologicals, Inc. (collectively, the "Next Step Case Plaintiffs").  *Id.*  The defendants in the Next Step Case are Ronald Cieutat, Nickolas Shoemaker, Keitrus Clark, Next Step Specialty Pharmacy, L.L.C., Next Step Tennessee, LLC, Next Step North Carolina, LLC, Next Step New Orleans, LLC and Next Step West Virginia, L.L.C. (collectively, the "Next Step Defendants").  **Neither HPCSP Investments (the buyer under the Equity Purchase Agreement) nor Eli Global (the maker under the Note) are parties in the Next Step Case.**  (ECF No. 1-7, p. 35 *et seq.*).  Lindberg is also not a party in the Next Step Case.  *Id.*  There is no scenario where the Next Step Case will result in any judgment owed to HPCSP Investments, to Eli Global or to Lindberg.  (ECF No. 1-7, p. 35).

Importantly, the Next Step Case was not brought by Mr. Cieutat or any other Seller.  Rather, it was filed by the Next Step Plaintiffs in the Circuit Court of Mobile County, Alabama, none of whom are parties to the Note or the arbitration provision of the Equity Equivalence Agreement.  (ECF No. 1-4, pp. 54-75; ECF No. 1-5, pp. 1-4).  None of HPCSP Investments, Eli Global or Lindberg is a party to the Next Step Case.  And no party in the Next Step Case has sought arbitration under the Equity Purchase Agreement or asserted any setoff claims.  *Id.*

Lindberg filed his Verified Petition to Compel Arbitration and Stay All Court Proceedings on February 4, 2025.  In seeking arbitration, Lindberg relies on an arbitration provision in the Equity Purchase Agreement.  (ECF No. 1, p. 9; ECF No. 1-2, pp. 23-24, §12.10).  However, Lindberg's right to assert arbitration rights under this provision is dubious, at best.  He is not a party to the Equity Equivalence Agreement, and Lindberg admits that he is no longer the owner of, and has no control over, HPCSP Investments, who was the purchaser in the Equity Purchase

4

Agreement.  Compl. ¶ 15.[6]

Lindberg argues that the Next Step Plaintiffs alleged that "HPCSP Investments, LLC . . . have suffered the loss of at least $6 million in revenue."  Compl. ¶ 20.  But that is belied by the pleadings in that action, which is incorporated by reference and attached to the complaint.[7]  *See id.* ¶¶ 17-20; (ECF No. 1-4, pp. 54-75; ECF No. 1-5, pp. 1-14).  The Next Step Plaintiffs have not alleged any damage to HPCSP Investments and HPCSP Investments is not a party to the Next Step Case.  (ECF No. 1-4, pp. 54-75; ECF No. 1-5, pp. 1-14).  However, in the Next Step Case, the Next Step Plaintiffs have made numerous, incorrect allegations – one of which is that Mr. Cieutat violated the confidentiality provision of the Equity Purchase Agreement.  *Id.*  The majority of the Next Step Case, which is still pending, is focused on non-compete agreements of two employees of the Next Step Plaintiffs that are now working for Next Step.  *Id.*  None of these claims is subject to any arbitration provision.  Lindberg further incorrectly alleges that over $12 million, which is owed to Cieutat and other Sellers under the Note judgment, can be offset by any judgment in the Next Step Case.  Compl. ¶ 21.

## ARGUMENT

On a Motion to Dismiss, "[t]he question is whether the pleading alleges "'enough facts to state a claim for relief that is plausible on its face.'"  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (*quoting Bell Atl. Corp.,* 127 S. Ct. at 1974)."  *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008).  Here, the pleading fails to state a claim for relief

---

[6] All references to "Compl. ¶ __" are to paragraphs of the Verified Petition to Compel Arbitration and Stay All Court Proceedings.  (ECF No. 1, pp. 1-7).

[7] In considering a motion to dismiss, "[a] court may take into account any written instrument attached to the complaint, as well as statements and documents 'incorporated in the complaint by reference.'"  *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 953 F. Supp. 2d 495, 496 n.1 (S.D.N.Y. 2013) (brackets omitted).  A court may also "consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint."  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (quoting *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005)).

in a number of ways.  Pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, this matter is due to be dismissed.

## I.    None of the Defendants has been properly served.

As a preliminary matter, Mr. Cieutat, the only Defendant purportedly served, was never properly served.  Carol Lambeth, ostensibly a process server, asserts that she served the Complaint within Alabama "by personal service by handing the following documents to an individual identified as Ronald Cieutat, Sellers' Representative."  (ECF No. 8).  This is false.

On February 26, 2025, Mr. Cieutat received a phone call from an unidentified woman who claimed she had a package to deliver to him.  Ex. A (Cieutat Aff.).[8]  Mr. Cieutat told her he was not home and did not know when he would be home.  *Id.*  Mr. Cieutat was expecting the delivery of some boat parts and wrongly assumed that this call was related to that delivery.  *Id.*  The caller asked Mr. Cieutat his height, weight, and hair color, which he provided.  *Id*.  No one else was at Mr. Cieutat's home that day.  *Id.*  When he returned home, there was a box left on his doorstep with the Complaint.  *Id.*  He did not see who delivered the box, nor did he appreciate that the contents contained the Complaint because Lindberg has sent Mr. Cieutat multiple packages of documents since Lindberg's incarceration.  *Id.*  In stark contrast to the truth, the Affidavit of Service purports that Mr. Cieutat was **personally** served.  (ECF No. 8).  It is clear that the caller asked Mr. Cieutat to describe his appearance in order for Ms. Lambeth to fraudulently claim that personal service had been achieved.  *Id.*

On March 3, 2025, Mr. Cieutat received the Complaint again, this time by United States Mail.  Ex. A (Cieutat Aff.).  He did not sign for the package and he was not home when it was delivered.  *Id.*  It was left in his mailbox.  *Id.*

---

[8] All references to "Ex. __" are to the documents attached as exhibits to the Declaration of Brian M. Burnovski, filed contemporaneously herewith.

Rule 4(e) of the Federal Rule of Civil Procedure provides that a person can be properly served outside of New York, but within the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

The alleged service on Mr. Cieutat complied with none of these methods.

### A.    Alabama law does not permit service by the methods used.

Under Alabama law, an individual may be served by "leaving a copy of the summons and the complaint at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process." Ala. R. Civ. Proc. 4(c)(1). To effect service upon an individual, "[t]he person serving process shall deliver a copy of the process and accompanying documents **to the defendant or other person who may be served**." Ala. R. Civ. Proc. 4(i)(1)(C) (emphasis added). In this case, no person was served; rather, a box was left on a doorstep. Ex. A (Cieutat Aff.)

These requirements were not satisfied. No person was directly served with process; rather, a box was left on a doorstep. *Id.* Further, the box left on Mr. Cieutat's step was not left "with some person" who lives at this residence. *Id.*

Under Alabama law, a defendant can also be served by certified mail. Ala. R. Civ. Proc. 4(i)(2). Service by certified mail requires that the Complaint be sent "as certified mail with instructions to forward, return receipt requested, with instructions to the delivery postal employee

to show to whom delivered, date of delivery, and address where delivered.  The return receipt shall be addressed to the clerk of court issuing the process and shall identify the case number of the case in which the pleading has been filed. . . .  Upon mailing, the attorney or party shall immediately file with the court an 'Affidavit of Certified Mail of Process and Complaint.'  That affidavit shall verify that a filed copy of the process and complaint or other document to be served has been mailed by certified mail in accordance with this rule." Ala. R. Civ. Proc. 4(i)(2)(B)(ii).  It is evident from the Affidavit of Service and attachments that the mailing to Mr. Cieutat was not by certified mail, but rather regular U.S. Mail.  (ECF No. 8).  Moreover, service by certified mail is only deemed complete from "the date of delivery to the named addressee or addressee's agent as evidenced by signature on the return receipt."  Ala. R. Civ. Proc. 4(i)(2)(C).  There is no return receipt because the mailing was not done by certified mail, as required.  The comments to Rule 4(i)(2)(C) further state that "[w]hatever method of certified mail service is used, the return receipt must include the case number and must be addressed to the clerk of the court in which the action is pending."  These requirements simply have not been met.

In *Gaudin v. Collateral Agency*, 624 So. 2d 631 (Ala. Civ. App. 1993), there was no dispute that the defendant had received actual notice of the action.  Just as in this case, the complaint was left at the defendant's premises and a copy was mailed by first-class mail.  The Alabama Court of Civil Appeals in *Gaudin* held that the defendant was never properly served pursuant to the rules.  The Court reasoned that despite the defendant having received notice of the Complaint, "service on [the defendant] was not by process server or by certified mail as required by Rule 4.1(a)" and did not satisfy Alabama's requirements for service.  *Id.* at 633.  The Court in *Gaudin* concluded that the defendant was not properly served.  Similarly, Mr. Cieutat was not properly served under Alabama law.

**B.    The requirements for the other Federal methods of service were not properly met.**

Mr. Cieutat also was not properly served under the Federal Rule of Civil Procedure 4(e)(2). Rule 4(e)(2) allows service by personally delivering a copy of the complaint and summons to the defendant, or by leaving a copy with a person at the defendant's usual place of abode.  As already discussed above, Mr. Cieutat was not personally served with the summons and the Complaint was not left **with a person** at his usual place of abode.  *See, e.g. Mathias v. Homestreet Bank*, 2021 U.S. Dist. LEXIS 156985, at *6-7 (D. Haw. July 29, 2021) (holding that leaving the complaint at the door "is insufficient to meet the personal service requirement of the summons and complaint under" Rule 4); *Zhu Jun v. Bank of Am., N.A.,* 2024 U.S. LEXIS 31926 (2d Cir. Dec. 17, 2024) (holding that leaving the complaint at the door does not comport with Rule 4).  Mr. Cieutat was not properly served under any of the methods provided in Rule 4(e).  As a result, his time to answer the Complaint has not yet begun to toll.

**C.    None of the other defendants has been properly served.**

Lindberg has made no attempt to serve any of the other Defendants.  Instead, each Defendant is served "c/o Ronald Cieutat."  (ECF No. 7).  Rule 4(e)(2)(C) allows for an individual to be served by delivering a copy to an agent authorized by appointment, but that did not occur here.

First, as discussed above, even if Mr. Cieutat is an agent authorized by appointment by the other defendants (which he is not), he has not been properly served.

Second, "[i]mportantly, Rule 4(e)(2)(C) 'require[s] a clear and specific appointment of the person served as one authorized to accept service of process.'" *Tuebor Reit Sub LLC v. Paul*, 2020 U.S. Dist. LEXIS 150145, *9 (S.D.N.Y. Aug. 19, 2020) (quoting *Jackson v. Cty. of Nassau*, 339 F. Supp. 2d 473, 478 (E.D.N.Y. 2004)).  Presumably, Lindberg relies on the appointment of Mr.

Cieutat as the Sellers' Representative in the Equity Purchase Agreement to serve Mr. Cieutat on behalf of the other Defendants.  (ECF No. 1-2, pp. 11-12).  But nothing in the Equity Purchase Agreement confers upon the Seller's Representative the power to accept service on behalf of the other Defendants in this action.  *Id.*  Therefore, the other Defendants have not been served either. Mr. Cieutat expressly informs the Court that he is not authorized to accept service on behalf of the other Defendants.

Given the lack of proper service on Mr. Cieutat and the failure to even attempt to serve the other Defendants, this case should be dismissed.

## II.    The Promissory Note cannot be arbitrated because it has been fully adjudicated.

The Note has been reduced to judgment, arbitration was never invoked, and any right to arbitration has been lost.  The amount owed on the Note has been litigated, decided, appealed, affirmed and reduced to a judgment, without any request by Eli Global or Lindberg to arbitrate the matter.  *See Eli Global*, 2023 Ala. LEXIS 134.  In *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991), the Second Circuit held that:

> [A] party does waive this right [to arbitration] when he engages in "protracted litigation", *Com-Tech Assoc. v. Computer Assoc.*, 938 F.2d 1574, 1576 (2d Cir. 1991), that results in prejudice to the opposing party.  "Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated."  *Rush*, 779 F.2d at 887.  **Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.**  *See Com-Tech*, 938 F.2d at 1576; *Rush*, 779 F.2d at 887-88.

(emphasis added).  Here, no party invoked arbitration in the Note Case.  The litigation on the breached Note began almost five (5) years ago.  *Eli Global*, 2023 Ala. LEXIS 134, at *11-12.  The Note balance was reduced to a judgment two and a half (2½) years ago.  *Id.* at *18.  The right to arbitrate the amount due on the Note, if any such right existed, has long been waived.

10

When the Note Case was decided and the obligations owed under the Note were reduced to a judgment, the provisions of the Note were merged into the judgment. *See, e.g., Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) (holding, that "[t]he general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives," such that the interest rate terms in the note are no longer enforceable.). Lindberg cannot now seek to revive the Note case in yet another attempt to avoid the obligations owed to the Sellers.

Moreover, Lindberg's second request for relief that this Court stay "all court proceedings related to the Promissory Note during the pendency of full arbitration on the merits" is impossible, because there are no proceedings related to the Note. Compl. at 7. The Note Case has been fully and finally resolved. *See Eli Global*, 2023 Ala. LEXIS 134. The only litigation pending that is addressed in the Complaint is the Next Step Case, the subject of which is not the Note.

Lindberg's Petition to Compel Arbitration should be dismissed because the obligations under the Note have been fully adjudicated.

## III.    Lindberg cannot compel the Next Step Case to arbitration.

If Lindberg is asking this Court to compel the Next Step Case to arbitration, there are multiple reasons why this Court cannot. First, Lindberg is not a party to the Next Step Case. Moreover, none of the parties in the Next Step Case sought arbitration, and therefore have waived any arbitration of those claims (if any of those claims were subject to arbitration). Second, the Next Step Case does not contain claims subject to arbitration because it cannot result in an offset under the Note. Finally, the Court lacks jurisdiction over the necessary parties to compel arbitration.

**A.    Lindberg is not a party to the Next Step Case and none of the parties in the Next Step Case have invoked the arbitration provision.**

Lindberg is not a party in the Next Step Case.  Yet, he seems to be asking this Court to order the Next Step Case to arbitration.  *See* Compl. ¶¶ 17-21, 27-30.  Lindberg simply cannot insist that parties arbitrate a matter in which he has no role.[9]  This is particularly true where the **actual parties** to the Next Step Case are free to waive their rights to arbitrate (if any such rights exist).  *See, e.g.*, *Kawasaki Heavy Indus. v. Bombardier Rec. Prods.*, 660 F.3d 988, 995 (7th Cir. 2011) (holding that "when a party chooses to proceed in a judicial forum, there is a rebuttable presumption that the party has waived its right to arbitrate").  None of the parties in the Next Step Case have asserted any interest in arbitrating the matter.  If third parties could force litigation to which they are not a party to be arbitrated, chaos would ensue.  Lindberg's Complaint is due to be dismissed.

Where Lindberg has failed to articulate an arbitrable claim in his Complaint on its face, he should not be entitled to arbitration.  *See, e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1373 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005) (holding that to determine whether to compel arbitration, "a court must analyze whether (1) there is a valid written agreement to arbitrate; (2) the issue is . . . arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims.").

The Next Step Plaintiffs specifically did **not** agree to arbitrate their claims in the Next Step Case.  The Next Step Plaintiffs were not parties to the Equity Purchase Agreement,[10] and therefore also did not agree to arbitration of these claims that they now assert.  (ECF No. 1-7, p. 35).  But

---

[9] It is also unclear if Lindberg has authority to make claims for himself.  A receiver has been appointed of Lindberg's assets.  Ex. C (Order of Appointment of Receiver).

[10] The ownership interest in these entities was sold under the Equity Purchase Agreement, but these entities were not parties to the Equity Purchase Agreement, except as to a single section.

even if this Court were to find that the Next Step Plaintiffs are bound to the arbitration provision in the Equity Purchase Agreement, they have waived their right to arbitrate by substantially invoking litigation.  The Next Step Plaintiffs filed the Next Step Case on May 8, 2024.  (ECF No. 1-4, p. 54).  The case is set to be tried in a few months on June 25, 2025.  Ex. B (Trial Court Order). The Next Step Case is due to be mediated on April 25, 2025.  *Id.*  When a party chooses to litigate a dispute, even where an arbitration clause exists, the party waives "the right to submit the question to arbitration."  *Yonkers v. Cassidy*, 44 N.Y.2d 784 (Ct. App. 1978); *see also*, *Thau v. Dewitt Rehab.*, 2022 N.Y. Misc. LEXIS 43870, at *5 (Sup. Ct. July 28, 2022) (holding same).  The Next Step Plaintiffs have clearly waived their right to arbitrate the Next Step Case (if they ever had such a right).[11]  Because neither Lindberg nor any Defendant agreed to arbitrate claims between the Next Step Plaintiffs and Mr. Cieutat, it is clear that the Complaint has failed to state a claim that is subject to arbitration, and the Complaint should be dismissed against all Defendants.

> **B.    The Next Step Case is not a claim subject to arbitration because it cannot result in an offset.**

Lindberg is asking this Court to compel arbitration.  While the Complaint is unclear what claims or issues specifically Lindberg is asking to be arbitrated, the basis to compel arbitration is clear.  Namely, Lindberg asserts that the Next Step Case alleges that Mr. Cieutat violated the Equity Purchase Agreement and that any award that results from that (erroneous) allegation should offset the judgment on the Note.  The most glaring problem is the complete misalignment of parties for an offset claim.

The offset provision in the Note that Lindberg relies upon states that Eli Global may "set-off and apply any and all amounts payable by [Eli Global] to [Sellers] under this Promissory Note

---

[11] Moreover, the Alabama Court that is handling this litigation is in a far better position to determine if litigation is progressed sufficiently to constitute waiver.

against any amounts payable by [Sellers] to [HPCSP Investments]."  (ECF No. 1-2, p. 54, § 5).  The Note can **only** be offset by an amount payable from the Sellers to HPCSP Investments, pursuant to the offset provision.  If no amount is payable from the Sellers to HPCSP Investments, the offset provision in the Note upon which Lindberg relies, is not triggered.

In the Next Step Case, none of the Sellers will owe HPCSP Investments, because **HPCSP Investments is not a party in the Next Step Case**.  Lindberg's claim fails on its face because it seeks to adjudicate an offset in the Next Step Case that will never exist.  Lindberg seeks to offset a speculative, future judgment that does not exist against Mr. Cieutat and other **unrelated** individuals and entities in favor of **unrelated** third parties, against the judgment on the Note owed by Eli Global, based on an offset provision in the Note.  Because Lindberg has failed to identify a claim that is subject to the offset provision of the Note, Lindberg has failed to identify a claim that is subject to the arbitration provision of the Equity Purchase Agreement.

### C.    This Court lacks jurisdiction over the necessary parties to compel arbitration.

This Court does not have personal jurisdiction over the parties that Lindberg seeks to compel to arbitration.  In the Next Step Case, Keitrus Clark is a resident of Tennessee and never agreed to any arbitration of the claims against her, as she was not a party to the Equity Purchase Agreement.  (ECF No. 1-7, p. 36, ¶8).  Similarly, Nickolas Shoemaker is a resident of Alabama and also never agreed to any arbitration of the claims against him, as he was not a party to the Equity Purchase Agreement.  *Id.* ¶ 7.  In addition, the remaining Next Step Defendants are all Alabama entities doing business in Alabama, Tennessee, North Carolina, Louisiana and West Virginia.  *Id.* ¶¶ 9-13.  None of these entities were parties to the Equity Purchase Agreement and did not agree to arbitration of the claims against them.

The Next Step Plaintiffs are Alabama entities doing business in Alabama, Tennessee, Louisiana and West Virginia.  *Id.* ¶¶ 1-5.  None of the Next Step Plaintiffs are parties to the

arbitration provision in the Equity Purchase Agreement.  In fact, the Next Step Plaintiffs specifically signed the Equity Purchase Agreement "as to Section 7.10" of the Equity Purchase Agreement, **only.**  (ECF No. 1-2, p. 50).  The arbitration provision is at Section 12.10.  *Id.* at 23. Thus, the Next Step Plaintiffs specifically **did not agree** to arbitrate any disputes.  As set forth above, even if these plaintiffs were subject to the arbitration provision, they waived the right to arbitration by filing a lawsuit in Alabama.  The **only** party in the Next Step Case that was a party to the arbitration provision in the Equity Purchase Agreement was Mr. Cieutat.  (ECF No. 1, p. 16).

This Court lacks personal jurisdiction over parties in Alabama, Tennessee, and other states that are not New York, to compel the Next Step Case pending in Alabama, to arbitration.  *See In re Boon Glob., Ltd.,* 923 F.3d 643, 650 (9th Cir. 2019) (holding that "[t]he district court must have personal jurisdiction over each individual third-party entity before compelling them to arbitrate.") (internal citations omitted).  Because it is impossible for this Court to invoke personal jurisdiction over the Next Step Plaintiffs' claims, this matter is due to be dismissed.

## IV.    It is premature to compel the issue of offset to arbitration because there is no judgment in the Next Step Case.

As mentioned above, it is difficult to understand what claims and issues Lindberg seeks this Court to compel to be arbitrated.  The letter Lindberg sent on June 29, 2024, demands an immediate and "full Offset of all amounts claimed under the Promissory Note."  (ECF No. 1-7, p. 27).  Lindberg incorrectly claims in the letter that "Eli Global, LLC is entitled to a full offset against all amount due on the promissory note for all damages as a result of" the breaches alleged in the Next Step Case.  *Id.*  Lindberg claims he has "given notice that an offset of $12,200,000 has been applied to all amounts due under the Promissory Note" and that "there are no remaining amounts due on the Promissory Note."  *Id.* at 28.  As discussed above, the offset provision in the Note only

permits offset of "any amounts payable by [Sellers] to [HPCSP Investments]." (ECF No. 1-2, p. 54, §5). As also discussed above, there is no possibility that the Next Step Case will result in amounts owed from Sellers to HPCSP Investments because HPCSP Investments is not a party to the Next Step Case.

However, even assuming that Lindberg could be entitled to an offset from a judgment rendered against Mr. Cieutat in favor of parties other than HPCSP Investments in the Next Step Case, no such judgment exists at this time. The offset provision in the Note is for "amounts payable," not amounts allegedly owed. *Id.* Undisputedly, there are no "amounts payable" to HPCSP Investments to be offset, and unless a judgment is entered against Mr. Cieutat, there may **never** be any amounts payable. Thus, any request to arbitrate is premature and should be denied.

In short, Lindberg is asking this Court to submit a pending litigation in another State that is nearing completion, to which he is not a party, to arbitration. Not only is Lindberg not a party to the Next Step Case, the outcome of the Next Step Case cannot result in amounts being owed to HPCSP Investments because it is not a party, and the Next Step Case therefore cannot result in an offset of the unpaid judgment on the Note. Lindberg has failed to identify any claims and parties subject to the arbitration provision he references. As a result, this matter should be dismissed.

## CONCLUSION

For the reasons discussed above, Defendant Ronald Cieutat respectfully requests that this Court dismiss the Complaint with prejudice.

Dated:   New York, New York
         March 26, 2025


                                            **DAVIS POLK & WARDWELL LLP**

OF COUNSEL:                            By:  _/s/ Brian M. Burnovski_

**SPEEGLE, HOFFMAN, HOLMAN &**             Brian M. Burnovski
**HOLIFIELD, LLC**                         450 Lexington Avenue
                                           New York, New York 10017
Jerome E. Speegle                          Telephone: (212) 450-4666
Jennifer S. Holifield                      Facsimile: (212) 450-5666
P.O. Box 11 (36601)                        brian.burnovski@davispolk.com
5 Dauphin Street, Suite 301
Mobile, AL 36602                           _Attorneys for Defendant_
Telephone: (251) 694-1700                  _Ronald Cieutat_
Facsimile: (251) 694-1998
jspeegle@speeglehoffman.com
jholifield@speeglehoffman.com


                                    17