## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **GREG E. LINDBERG,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **RONALD CIEUTAT, TODD VEREEN,** | § | |
| **DAVID GLENN FINNEGAN,** | § | |
| **FLOYD SLAY, JR., TIMOTHY** | § | |
| **ANDREWS, TYLA FOWLKES, DEBRA** | § | |
| **LITTLE, THOMAS WILLIAMS, ERIN** | § | **Civil Action No. 1:25cv1000** |
| **ANDERSON, JAN WHEELER, EUGENE** | § | |
| **DREHER, IV, NANCY DREHER,** | § | |
| **JOSEPH MOORE, PHILLIP EPSTEIN,** | § | |
| **MICHAEL DANDURAND, WILLIAM** | § | |
| **MCFARLAND, ANGELA CLARK, CAROL** | § | |
| **REED, and MICHAEL RUDGE,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## <u>DEFENDANT RONALD CIEUTAT'S MOTION TO DISMISS</u>

Plaintiff Greg E. Lindberg ("Lindberg"), pursuant to Federal Rule of Civil Procedure 7(b) and the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., submits this Memorandum of Law in opposition to Defendant Ronald Cieutat's ("Cieutat") Motion to Dismiss (Dkt. # 11, filed March 26, 2025) ("MTD"). For the reasons set forth below, the Court should deny the MTD and grant Lindberg's Verified Petition to Compel Arbitration and Stay All Court Proceedings (Dkt. # 1, filed February 4, 2025) ("Petition").

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................iii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

   I.   SERVICE OF PROCESS WAS PROPER UNDER FEDERAL RULE 4 ........... 2

     A.   Service Complied with Alabama Law ........................................................... 2

     B.   Service on Other Defendants via Sellers' Representative Is Permissible .... 3

     C.   Improper Service Would Not Warrant Dismissal ......................................... 6

       1.   The Process Server's Declaration Establishes a Presumption of Proper Service ......................................................................................................... 8

       2.   Defendant General Denials Do Not Trigger an Evidentiary Hearing ....... 9

   II.   THE PROMISSORY NOTE'S ADJUDICATION DOES NOT PRECLUDE ARBITRATION OF OFFSET CLAIMS ............................................................. 10

     A.   Offset Claims Are Distinct and Arbitrable ................................................. 10

     B.   No Waiver Occurred ................................................................................... 11

   III.   THE NEXT STEP CASE SUPPORTS, BUT IS NOT REQUIRED FOR, ARBITRATION ............................................................................................... 11

     A.   Rule 12(b)(6) ............................................................................................. 12

       1.   Plaintiff Adequately Plead His Cause of Action ..................................... 13

       2.   Lindberg Seeks Arbitration of Offset, Not the Next Step Case .............. 17

         a.   The Offset Provision Is Referable to Arbitration Under the Note's Clause ................................................................................................. 18

         b.   Prior Litigation Does Not Preclude Arbitration of the Offset Provision ............................................................................................. 18

     B.   The Offset Provision's Arbitrability Is Independent of Litigated Issues .... 19

     C.   Policy Favors Arbitration of the Offset Provision ...................................... 19

   IV.   Jurisdiction Exists Over Defendants ........................................................... 20

CONCLUSION ...................................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,*
  499 F.3d 663, 667 (7th Cir. 2007) ........................................................................... 14

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937 (2009) ................................................................................ 14,15

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009) ............................................................................ 12,13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
  475 U.S. 643, 648-49 (1986) ................................................................................ 21

*Banque de Paris et des Pays-Bas v. Amoco Oil Co.,*
  573 F. Supp. 1464 (S.D.N.Y. 1983) ........................................................................ 18

*Barone v. United States of America, et al*
  2015 WL 10791889 (2015) ...................................................................................... 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................ 1,12,13,14,15

*BYD Co. Ltd. v. VICE Media LLC,*
  No. 21-1097, 2022 WL 598973, at 3 n.4 (2d Cir. Mar. 1, 2022) ............................ 16

*Dean Witter Reynolds, Inc. v. Byrd,*
  470 U.S. 213, 223 (1985) ........................................................................................ 17

*Doctor's Assocs., Inc. v. Distajo,*
  107 F.3d 126, 132-133 (2d Cir. 1997) .................................................................... 11

Eli Global, LLC v. Cieutat,
  2023 Ala. LEXIS 134 (Ala. Dec. 1, 2023) ......................................................... 10,11

*Erickson v. Pardus,*
  551 U.S. 89, 93 (2007) ............................................................................................ 13

*Gaudin v. Collateral Agency*,
    624 So. 2d 631, 633 (Ala. Civ. App. 1993) ................................................................. 3

*Gragg v. United States*,
    United States Court of Appeals, 717 F 2d at 1345 ................................................. 5

*Grammenos v. Lemos,*
    457 F.2d 1067, 1070 (2d Cir.1972) ........................................................................... 6

*In re Celsius Network LLC,*
    658 B.R. 643 (Bankr. S.D.N.Y. 2024) ..................................................................... 19

*In re RMM Records & Video Corp.*,
    372 B.R. 603 (Bankr. S.D.N.Y. 2007) ..................................................................... 19

*Kramer v. Hammond,*
    943 F.2d 176 (2d Cir. 1991) .................................................................................... 11

*Lane, Ltd. v. Larus & Bros. Co.,*
    136 F.Supp. 299 (S.D.N.Y.1955) ............................................................................... 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614, 624-25 n.13 (1985) ...................................................................... 11,20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 24 (1983) .............................................................................. 17,18,19,21

*Nature's First Inc. v. Nature's First Law, Inc.*,
    436 F. Supp. 2d 368, 373 (D. Conn. 2006) ............................................................... 9

*Noel v. Wal-Mart Stores, E. LP.*,
    764 F. App'x 17, 19-20 (2d Cir. 2019) .................................................................... 16

*Nolan v. City of Yonkers,*
    168 F.R.D. 140, 144 (S.D.N.Y. 1996) ....................................................................... 9

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*,
    301 F.3d 54, 57 (2d Cir. 2002).......................................................................... 3,7,8,9

iv

*Pereira v. Cogan,*
    267 B.R. 500, 507 (S.D.N.Y. 2001) ........................................................................ 19

*Rana v. Islam,*
    305 F.R.D. 53, 63 (S.D.N.Y. 2015) .......................................................................... 8

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA,*
    92 F.4th 415, 436 (2d Cir. 2024) ........................................................................... 16

*Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.,*
    269 F. Supp. 2d 356, 360-361 (S.D.N.Y. 2003) ..................................................... 18

*Smith v. Spizzirri,*
    601 U.S. 472 (2024) .......................................................................................... 1,21

*Stanga v. McCormick Shipping Corp.,*
    268 F.2d 544, 554 (5th Cir.1959) ........................................................................... 7

*Thomas v. Yonkers Police Dept.,*
    147 F.R.D. 77, 79 (S.D.N.Y.1993) ...................................................................... 4, 8

*Voice Tele Servs., Inc. v. Zee Telecoms Ltd.,*
    338 F.R.D. 200, 204 (S.D.N.Y. 2021) ..................................................................... 2

**STATUTES**

9 U.S.C. § 3.................................................................................................... 8,24, 25, 29

9 U.S.C. § 4........................................................................................................ 8,10, 28

28 U.S.C. § 1332 ...................................................................................................... 27

28 U.S.C. § 1391(a)(2) .............................................................................................. 27

CPLR § 302(a) ......................................................................................................... 28

CPLR § 311(4) ......................................................................................................... 11

**OTHER AUTHORITIES**
5 Wright and Miller, *Federal Practice and Procedure* § 1354, at 584 (1969) ............ 12

Siegel, *Practice Commentary on Amendment of Federal Rule 4,*
  96 F.R.D. 88, 101–02. ............................................................................ 14

## RULES

Ala. R. Civ. P. 4(i)(2) ............................................................................ 9

Ala. R. Civ. P. 4(c)(1) ............................................................................ 9

Fed.R.Civ.P. 4 ............................................................................... 13,14

Fed. R. Civ. P. 4(d) (1) ......................................................................... 12

Fed. R. Civ. P. 4(e) ................................................................................ 8

Fed. R. Civ. P. 4(e)(1)-(2) .................................................................. 8,15

Fed. R. Civ. P. 4(e)(2)(A) ....................................................................... 9

Fed. R. Civ. P. 4(e)(2)(C) ..................................................................... 10

Fed. R. Civ. P. 4(h)(1)(b) ..................................................................... 10

Fed.R.Civ.P. 4(m) ................................................................................ 14

Fed. R. Civ. P. 8 ............................................................................... 20,21

Fed. R. Civ. P. 8(a)(2) ......................................................................... 23

Fed. R. Civ. P. 12(b)(5) ...................................................................... 8,12

Fed. R. Civ. P. 12(b)(6) .................................................................... 19,23

Fed. R. Civ. P. 61 ........................................................................... 10,11

## PRELIMINARY STATEMENT

Lindberg's Petition aims to enforce a binding arbitration clause found in the Equity Purchase Agreement ("Purchase Agreement") dated January 19, 2018 (Dkt. #1), which is incorporated into the Promissory Note ("Note") (Dkt. #1). Together, these documents are referred to as the "Agreement." The Petition seeks to resolve disputes, including Lindberg's right to offset amounts owed under the Note against damages resulting from the Defendants' breaches of the Purchase Agreement.

Cieutat's MTD presents four main arguments for dismissal: (1) improper service of process; (2) the adjudication of the Promissory Note precludes arbitration; (3) the Next Step Case cannot be arbitrated; and (4) any offset claim is premature. Each of these arguments fails under the Federal Arbitration Act's ("FAA") liberal policy that favors arbitration, as well as the facts stated in the Petition, which the Court must accept as true at this stage. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Therefore, the Court should compel arbitration and stay all related proceedings, as mandated by 9 U.S.C. §§ 3-4 and *Smith v. Spizzirri*, 601 U.S. 472 (2024).

# ARGUMENT

## I.   SERVICE OF PROCESS WAS PROPER UNDER FEDERAL RULE 4

Cieutat's claim of improper service under Fed. R. Civ. P. 12(b)(5) is unfounded. Lindberg adhered to Rule 4(e), which allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or by "delivering a copy of the summons and of the complaint to the individual personally" or via other specified methods. Fed. R. Civ. P. 4(e)(1)-(2).

### A.    Service Complied with Alabama Law

Service was effected on Cieutat in Alabama on February 26, 2025, as detailed in the Affidavit of Service (Dkt. # 8). This affidavit confirms that process server Carol Lambeth personally handed the summons and petition to an individual identified as Ronald Cieutat. Cieutat's affidavit (MTD Ex. A) disputes this, claiming a box was left on his doorstep after a phone call. However, at the motion to dismiss stage, the Court must accept Lindberg's evidence unless patently incredible. *See Voice Tele Servs., Inc. v. Zee Telecoms Ltd.*, 338 F.R.D. 200, 204 (S.D.N.Y. 2021). The affidavit of service creates a presumption of proper service, and Cieutat's self-serving denial does not overcome this presumption without a hearing. *See Old Republic Ins. Co. v. Pac.*

*Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). Additionally, Alabama Rule of Civil Procedure 4(c)(1) permits service by delivering process to the individual, which the affidavit confirms occurred.

Furthermore, Cieutat's receipt of the petition by U.S. Mail on March 3, 2025 (MTD Ex. A) provides additional support for actual notice, although such notice is not required under Rule 4(e)(2)(A) for personal delivery. Alabama's certified mail requirements (Ala. R. Civ. P. 4(i)(2)) are irrelevant when personal service is effected. *See Gaudin v. Collateral Agency*, 624 So. 2d 631, 633 (Ala. Civ. App. 1993) (distinguishing improper drop-off from personal delivery). Service on Cieutat was proper.

### B. Service on Other Defendants via Sellers' Representative Is Permissible

Cieutat argues that the remaining Defendants were not properly served because notice was sent "c/o Ronald Cieutat" (Dkt. # 7). The Purchase Agreement designates Cieutat as the Sellers' Representative, authorized to "act as the agent of Sellers for the purpose of the Transaction Documents" and to "receive from Buyer any and all amounts payable by Buyer to Sellers under … the Note" (Purchase Agreement, p. 50, § 8.3). This broad agency authority implies that he is authorized to accept service on behalf of all Sellers (the Defendants in this case) for disputes arising from the Agreement. *See* Fed. R. Civ. P. 4(e)(2)(C) (service on an authorized agent). Cieutat's denial of such

authority (MTD p. 14) presents a factual dispute that cannot be resolved at this stage on a motion to dismiss.

At minimum, service on Cieutat satisfies the FAA's five-day notice requirement (9 U.S.C. § 4). Any defects can be cured by re-service if necessary, not dismissal. Courts reviewing *pro se* complaints for insufficient service of process typically apply a harmless error analysis under Fed. R. Civ. P. 61. Where the party asserting deficient service has actual knowledge of the action, no prejudice results from the defects in service, and the defendant—with proper service—would be subject to the Court's jurisdiction, dismissal is generally denied. *See Thomas v. Yonkers Police Dept.,* 147 F.R.D. 77, 79 (S.D.N.Y.1993).    In *Thomas,* for example, defendant County of Westchester sought dismissal on grounds of improper service and lack of personal jurisdiction. The Court found that the plaintiff had not complied with CPLR § 311(4), which governs service on a county. *Id.* at 78–79. The court declined to dismiss, however, noting that "[t]he objective of service of process is to insure actual notice," and that "[a]ctual notice to all defendants [has been] conceded." *Id.* at 79. The court further noted that "[n]o prejudice to the County was caused by failure to deliver the summons in this case to the particular officials named [in CPLR § 311(4) ]. No significant purpose would be served by dismissing this case and requiring re-service." *Id.* The court also cited to Fed.R.Civ.P. 61—which provides that "[a]t every stage of the proceeding, the

court must disregard all errors and defects that do not affect any party's substantial rights"—noting that Rule 61 "applies to formal matters such as compliance with detailed methods of service of process, provided always that actual notice is provided and that there is an adequate connection between the proposed locale of the litigation and the defendants." *Id.*

The reasoning of *Thomas* is entirely applicable here. Defendant has not claimed any prejudice, nor is there an argument that personal jurisdiction is otherwise improper.

In addition, Fed. R. Civ. P. Rule 4(h)(1)(B) allows service to be made to a representative of the Defendant. It states, in relevant part:

> "...by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant..."

Fed. R. Civ. P. Rule 4(h)(1)(B).

This interpretation is supported by the decision of *Gragg v. United States*, United States Court of Appeals, 717 F 2d at 1345, September 15, 1983, where the Court stipulated: "...[S]ervice upon a litigant's 'agent authorized by appointment or by law to receive service of process' generally constitutes service upon a litigant that is legally equivalent to service upon the litigant himself. Fed. R. Civ. P. 4(d) (1).

As mentioned *supra*, Cieutat was properly served, and as Sellers'
Representative, he was authorized to accept service on behalf of all
Defendants.

### C.    Improper Service Would Not Warrant Dismissal

"Motions under ... Rule 12(b)(5) differ from the other motions permitted
by Rule 12(b) somewhat in that they offer the court a course of action other
than simply dismissing the case when defendant's defense or objection is
sustained." 5 Wright and Miller, *Federal Practice and Procedure* § 1354, at 584
(1969). The Court has "broad discretion to dismiss the action or to retain
the case but quash the service that has been made on defendant." *Id.* at §
1354, p. 585 (citing, *inter alia, Lane, Ltd. v. Larus & Bros. Co.,* 136 F.Supp. 299
(S.D.N.Y.1955)).  Defendant clearly had actual notice of the current action,
having filed both a motion to dismiss and a memorandum of law.

Furthermore, this Court is not required to dismiss this action. As was
observed in *Grammenos v. Lemos,* 457 F.2d 1067, 1070 (2d Cir.1972), Rule 4 of
the Federal Rules should be interpreted liberally "to further the purpose of
finding personal jurisdiction in cases in which the party has received actual
notice."

The court noted that "incomplete or improper service will lead the court
to dismiss the action *unless it appears that proper service may still be
obtained.*" *Id.* (emphasis added). Here, Plaintiff engaged Carol Lambeth, a

licensed process server, who submitted an affidavit of service to the court. In her affidavit, she declared under penalty of perjury that she personally served Ronald Cieutat on February 26, 2025. (*See* Dkt. #8). Attached to her affidavit is a photo taken by Mrs. Lambeth of Ronald Cieutat's vehicle.

Additionally, even if we assume for the sake of argument that Defendant was not properly served—which we absolutely believe he was—this is indeed a case where proper service could still be achieved. Therefore, Plaintiff contends that a dismissal is premature. The Fifth Circuit aptly addressed the point:

> "There may well come a time in which the Trial Court, in the administration of the affairs of the Court, sees that there is simply no reasonably conceivable means of acquiring jurisdiction over the person of the defendant. When that time comes, it may be proper to dismiss the cause. But, on this record, ... the point has not yet been reached."

*Stanga v. McCormick Shipping Corp.,* 268 F.2d 544, 554 (5th Cir.1959).

Moreover, under the explicit terms of Fed.R.Civ.P. 4(m), the court can disregard a failure to meet the 90–day limit if the plaintiff can show "good cause why such service was not made." *See generally* Siegel, *Practice Commentary on Amendment of Federal Rule 4,* 96 F.R.D. 88, 101–02. Lindberg has clearly shown good cause. As a *pro se* litigant, he is entitled to rely on service by a licensed process server, *see* Fed.R.Civ.P. 4; *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.,* 301 F.3d 54, 57 (2d Cir.2002).

7

To be sure, dismissal is unwarranted where improper service causes no harm. Here, Defendant has not identified any prejudice, such as an inability to defend or delays in preparation, resulting from the alleged defect. Courts routinely deny 12(b)(5) motions when there is no showing of prejudice. *See Thomas v. Yonkers Police Dept.,* 147 F.R.D. 77, 79 (S.D.N.Y.1993).

### 1. The Process Server's Declaration Establishes a Presumption of Proper Service

The process server's sworn declaration constitutes prima facie evidence that service complied with Rule 4. *Rana v. Islam*, 305 F.R.D. 53, 63 (S.D.N.Y. 2015) (citing *Old Republic*, 301 F.3d at 57). The declaration, filed on March 13, 2025, details the delivery of the Civil Cover Sheet, Summons in a Civil Action, Verified Petition to Compel Arbitration and Stay All Court Proceedings, Complaint; Document 1-4; Document 2. The index number and filing date of the action were noted on the face of the papers served to Ronald Cieutat at 7664 Blakeley Oaks Drive North, Spanish Fort, AL 36527, on February 26, 2025, at 10:48 a.m., satisfying the requirements of Rule 4(e)(1)(2).

Second Circuit law consistently holds that such a declaration creates a presumption of validity. *Voice Tele Servs., Inc. v. Zee Telecoms Ltd.*, 338 F.R.D. 200, 204 (S.D.N.Y. 2021) ("A process server's sworn statement of service creates a presumption that service has been effectuated."). Absent clear error—

which Defendant does not demonstrate—the district court's reliance on this evidence is appropriate.

## 2. Defendant General Denials Do Not Trigger an Evidentiary Hearing

To overcome the presumption of service, Defendant must provide a sworn denial with "specific facts to rebut the statements in the process server's affidavit[]." *Old Republic*, 301 F.3d at 58. Mere denials or conclusory statements are insufficient. *Nature's First Inc. v. Nature's First Law, Inc.*, 436 F. Supp. 2d 368, 373 (D. Conn. 2006) ("Mere denials of service . . . are insufficient to overcome the presumption."). Defendant's "I never received the documents" lacks the granularity required—for instance, in this case, Defendant claimed he did not receive the Complaint and submitted a vague affidavit stating that someone he did not know had asked him for personal details like his height, weight, and hair color, which he allegedly provided. However, there are no corroborating affidavits to support his claim that he was not home at the time or third-party testimony. In *Nolan v. City of Yonkers*, 168 F.R.D. 140, 144 (S.D.N.Y. 1996), a bare denial of receipt was deemed insufficient to challenge a server's affidavit. Similarly, Defendant's submission in this case mirrors such inadequate rebuttals, and therefore, the district court should properly decline a hearing. Additionally, the affidavit from Carol Lambeth not only included a physical description of Cieutat, but it also

included a photograph of his vehicle with its license plate. Therefore, Cieutat's assertions fall short. Defendant's failure to provide specific, credible evidence leaves the declaration unassailed and according to Second Circuit law, Plaintiff does not need to provide further evidence to go beyond this prima facie showing absent a genuine factual dispute, which is absent here. See *Old Republic*, 301 F.3d at 57–58.

## II. THE PROMISSORY NOTE'S ADJUDICATION DOES NOT PRECLUDE ARBITRATION OF OFFSET CLAIMS

Cieutat contends the Note's adjudication in *Eli Global, LLC v. Cieutat*, 2023 Ala. LEXIS 134 (Ala. Dec. 1, 2023), bars arbitration (MTD pp. 10-11). This misinterprets Lindberg's Petition, which seeks arbitration for offset claims under the Note and Purchase Agreement, rather than relitigating the Note's principal amount.

### A. Offset Claims Are Distinct and Arbitrable

The offset provision in the Note states that Eli Global "is authorized … to set-off and apply any and all amounts payable by [Eli Global] to [Sellers] under this Promissory Note against any amounts payable by [Sellers] to [HPCSP Investments]" (Promissory Note, p. 2, § 5). The Purchase Agreement's arbitration clause covers "any and all disputes arising out of, relating to, or in connection with this Agreement" (Purchase Agreement, p. 61, § 12.10). Lindberg alleges that the Defendants breached the Purchase Agreement (e.g., confidentiality under § 6.4), resulting in damages to HPCSP Investments

exceeding the Note's $12 million judgment (Petition ¶¶ 17-21). These claims "touch matters" covered by the Agreement and are arbitrable. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624-25 n.13 (1985). The Note Case resolved Eli Global's liability, but did not address offset rights, which were not raised there. *See Eli Global*, 2023 Ala. LEXIS 134, at 11-18.

### B.    No Waiver Occurred

Cieutat asserts arbitration was waived by litigation of the Note Case (MTD p. 10, citing *Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991)). Waiver requires "protracted litigation" causing prejudice, such as relitigating decided issues. *Kramer*, 943 F.2d at 179. Lindberg did not initiate the Note Case; Defendants did (see Plaintiff's Memorandum at p. 11). His participation in that case does not waive arbitration of distinct offset claims arising later. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 132-133 (2d Cir. 1997) (defensive litigation does not waive arbitration absent prejudice). No prejudice exists in this situation— Defendants opted for litigation, and Lindberg's offset demand (Offset Arbitration Demand Exhibit C, Dkt. # 1) came after the Note judgment, relying on breaches alleged in the Next Step Case, which was filed on May 8, 2024.

### III.    THE NEXT STEP CASE SUPPORTS, BUT IS NOT REQUIRED FOR, ARBITRATION

Cieutat contends that Lindberg cannot compel arbitration in the Next Step Case or three reasons: he is not a party to the case, the claims are not

arbitrable, and this Court lacks jurisdiction (MTD pp. 11-15). However, this interpretation misreads the Petition. The Petition does not aim to arbitrate the Next Step Case itself; rather, it uses the allegations in that case as evidence of breaches that justify an offset.

### A.    Rule 12(b)(6)

As a general rule, a plaintiff is not required to prove the case or allege " ... detailed factual allegations ..." *See Barone v. United States of America, et al* 2015 WL 10791889 (2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions." *Iqbal, 556 U.S. at 678-79.*

### 1. Plaintiff Adequately Plead His Cause of Action

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court turned its attention to what was required of plaintiffs at the pleading stage. It concluded that plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. At 555. The Court was careful to note that this did not impose a probability requirement on plaintiffs: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. At 556. The Court did require, however, that the plaintiffs' claim be "plausible." In other words, "it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Id*.

Any question that *Twombly* had repudiated the general notice-pleading regime of Fed. R. Civ. Proc. 8 was put to rest two weeks later, when the Court issued *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). *Erickson* reiterated that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests" (internal quotation marks omitted) ( omission in original). *Twombly* and *Erickson* read together simply mean that at some point the factual detail in a complaint may

be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

This continues to be the case after *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). In *Iqbal*, a deeply divided Court (in a 5-4 decision) rejected the plaintiff's discrimination claims against high-ranking Bush administration officials because he had not offered sufficient factual allegations to plausibly support the inference of discriminatory intent. *Id*., at 1952. Iqbal's complaint failed to supply enough supporting facts to nudge his claim of purposeful discrimination "across the line from conceivable to plausible." *Id.* (citing *Twombly*, 550 U.S., at 570). Ever-present in the majority's opinion was the fact that these high-ranking officials faced an unprecedented attack on American soil, "perpetrated by 19 Arab Muslim hijackers." *Iqbal*, at 1951. In the absence of additional facts suggesting discriminatory purpose, the majority found Iqbal's claims drowned out by the "obvious alternative explanation" - namely, that Iqbal's arrest was justified by a "nondiscriminatory intent to detain aliens . . . who had potential connections to those who committed terrorist acts." *Id*., at 1951. Without any facts to support it, the majority reached their own conclusion about the defendants' innocent state of mind and simply found Iqbal's claim improbable. In this context, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

14

inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, (quotation marks omitted). Two working principles underlie *Twombly*: (1) the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions, threadbare recitals of a cause of action's elements, supported by mere conclusory statements, do not suffice; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, at 1949-50 (citing *Twombly*, 550 U.S. at 555-56).

In considering whether a complaint states a claim upon which relief can be granted, the court in *Iqbal* "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.' " *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

While "[d]ocuments outside of the pleadings are not generally considered in the context of a motion to dismiss," "a complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Noel v. Wal-Mart Stores, E. LP.*, 764 F. App'x 17, 19-20 (2d Cir. 2019) (summary order); *see Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) ("In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

As such, this Court may consider the Next Step case cited by Plaintiff, along with the arbitration clause in the Equity Purchase Agreement and the offset provisions of the promissory note attached to the complaint. *See, e.g.*, *BYD Co. Ltd. v. VICE Media LLC*, No. 21-1097, 2022 WL 598973, at 3 n.4 (2d Cir. Mar. 1, 2022) (summary order) ("We may consider both the ... Article and the ... Report because both documents were attached as exhibits to the Complaint."); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 167 n.1 (E.D.N.Y. 2019) (on a Rule 12(b)(6) motion "[t]he Court also considers exhibits attached to the complaint, including the report of the Onondaga County District Attorney's Office").

16

## 2. Lindberg Seeks Arbitration of Offset, Not the Next Step Case

The FAA mandates that courts stay proceedings on issues subject to arbitration under a written agreement unless the applicant has defaulted in pursuing arbitration. 9 U.S.C. § 3. Arbitration clauses are interpreted broadly, and doubts are resolved in favor of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Prior litigation does not bar arbitration of distinct issues within the clause's scope unless res judicata or collateral estoppel applies, which requires identical issues fully litigated with a final judgment. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985).

The Petition requests arbitration regarding "Plaintiff's demand for offset" against the Note due to breaches of the Purchase Agreement by Defendants (Dkt. #1, Petition ¶¶ 20-27). The Next Step Case, filed by subsidiaries of HPCSP against Cieutat and others (Next Step Petition, Exhibit D Dkt. #1), alleges that Cieutat violated confidentiality (§ 6.4), resulting in $6 million in annual losses (See complaint filed against Next Step, introductory paragraph, p. 2) ). Lindberg, as the beneficial owner of HPCSP, claims that these damages trigger the offset provision of the Note (Promissory Note p. 2 § 5). Whether the Next Step Case proceeds in Alabama is irrelevant; its allegations support an arbitrable dispute under the Agreement between

Lindberg and the Defendants. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (doubts resolved in favor of arbitration).

### a. The Offset Provision Is Referable to Arbitration Under the Note's Clause

The arbitration clause of the note covers "any dispute arising out of or relating to" the note, which includes the offset provision. The FAA requires this Court to enforce that clause and stay litigation of the offset issue. 9 U.S.C. § 3. In *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 360-361 (S.D.N.Y. 2003), the court held that a promissory note and related loan agreement were not independent, binding an assignee to arbitrate note-related disputes under the original arbitration clause. Similarly, the offset provision in this case is integral to the note and not a separate obligation, which means it falls within the broad scope of the arbitration clause.

### b. Prior Litigation Does Not Preclude Arbitration of the Offset Provision

Plaintiff's claim that prior litigation prohibits arbitration misinterprets the FAA and relevant case law. The prior action dealt with the breach of the Promissory Note and the amount due under the Note, but it did not address the validity or application of the offset provision. Arbitration of a distinct issue is not precluded by litigation of unrelated matters. *See Banque de Paris et des Pays-Bas v. Amoco Oil Co.*, 573 F. Supp. 1464 (S.D.N.Y. 1983) (holding an assignee must arbitrate offset disputes under a broad clause despite separate

18

litigation, absent notice or agreement to the contrary). No final judgment resolved the offset issue, and Defendant is not in default under § 3, having timely sought arbitration.

### B.    The Offset Provision's Arbitrability Is Independent of Litigated Issues

The offset provision involves distinct factual and legal questions—For example, the amounts owed by Defendant Cieutat as an offset to the amount owed by Plaintiff under the Promissory Note. Cieutat violated the terms of the Purchase Agreement and Plaintiff is entitled to an offset of the amounts owed under the Promissory Note, which were not adjudicated in prior proceedings. *Pereira v. Cogan*, 267 B.R. 500, 507 (S.D.N.Y. 2001), confirms that offset claims are independent unless contractually dependent on litigated obligations. Here, the offset is a standalone right, not contingent on prior rulings. Conversely, *In re Celsius Network LLC*, 658 B.R. 643 (Bankr. S.D.N.Y. 2024), limited arbitration where agreements lacked incorporation, but here, the note's clause directly governs the offset dispute.

### C.    Policy Favors Arbitration of the Offset Provision

The FAA embodies a "liberal federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24. Denying arbitration would undermine this policy, forcing piecemeal litigation of a provision the parties agreed to arbitrate. *In re RMM Records & Video Corp.*, 372 B.R. 603 (Bankr. S.D.N.Y. 2007), addresses offset timing under New York law but does not preclude arbitration if the

clause applies, as it does here. Defendant is seeking only to enforce the agreement, not to relitigate settled matters.

## IV.    Jurisdiction Exists Over Defendants

This Court has diversity jurisdiction (28 U.S.C. § 1332) and venue (28 U.S.C. § 1391(a)(2)) per the Agreement's New York arbitration clause (Purchase Agreement p. 61, § 12.10). Personal jurisdiction over Defendants, all Purchase Agreement signatories, is proper under New York's long-arm statute (CPLR § 302(a)) and due process, given their contractual consent to arbitrate in New York. See In re Boon Glob., Ltd., 923 F.3d 643, 650 (9th Cir. 2019). The parties involved in the Next Step Case are not necessary for this arbitration; it involves only Lindberg and the Defendants.

## V.    OFFSET ARBITRATION IS NOT PREMATURE

Cieutat argues that offset arbitration is premature because there is no judgment from the Next Step Case (MTD pp. 15-16). However, the FAA does not require a prior judgment. Lindberg alleges to have incurred damages from the Defendants' breaches (Petition ¶ 20), and the offset indicated in the Note applies to "amounts payable" (Promissory Note, p. 2, § 5), a term broad enough to cover unliquidated claims. *See Mitsubishi*, 473 U.S. 614 (1985) (arbitrators resolve scope of claims). Therefore, arbitration can assess whether damages are "payable" now, rendering the matter ripe for resolution.

## VI.    FAA MANDATES ARBITRATION AND A STAY

The FAA compels arbitration where a valid agreement exists, and no legal constraints foreclose it. 9 U.S.C. § 4; *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986). The Agreement's arbitration clause is unchallenged,   and no allegations of fraud or duress have been made. Federal policy favors arbitration (*Moses H. Cone*, 460 U.S. at 24), and a stay of all Note-related proceedings is mandatory upon granting arbitration. 9 U.S.C. § 3; *Smith*, 601 U.S. at 478 ("shall … stay" is not discretionary).

## CONCLUSION

For the foregoing reasons outline above, Lindberg respectfully requests that the Court deny Cieutat's Motion to Dismiss, grant the Petition to compel arbitration in New York, New York, stay all court proceedings related to the Promissory Note, award costs and fees, and grant any further relief that is just and proper.

**Dated:** May 1, 2025

**Respectfully submitted,**
/s/ Greg E. Lindberg
**Greg E. Lindberg**
P.O. Box 159
Thonotosassa, FL 33592
Email: gelindberg@gmail.com
Phone: 919-308-9686
Plaintiff, Pro Se