UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREG E. LINDBERG,

                    Plaintiff,

          – *against* –

RONALD CIEUTAT, TODD VEREEN,
DAVID GLENN FINNEGAN, FLOYD
SLAY, JR., TIMOTHY ANDREWS,
TYLA FOWLKES, DEBRA LITTLE,
THOMAS WILLIAMS, ERIN
ANDERSON, JAN WHEELER, EUGENE
DREHER, IV, NANCY DREHER,
JOSEPH MOORE, PHILLIP EPSTEIN,
MICHAEL DANDURAND, WILLIAM
MCFARLAND, ANGELA CLARK,
CAROL REED, and MICHAEL RUDGE,

                    Defendants.

**OPINION & ORDER**

25-cv-01000 (ER)

RAMOS, D.J.:

    Greg E. Lindberg brings this action *pro se* against Ronald Cieutat and 18 other individual defendants (collectively, "Defendants"), alleging violations of an Equity Purchase Agreement ("EPA") executed between HPCSP Investments, LLC ("HPCSP Investments") and 23 individual sellers (the "Sellers")[1]. Doc. 1. Specifically, the verified petition to compel arbitration and stay all court proceedings (the "Petition")[2] seeks three orders from the Court, all pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4: (1) an order compelling arbitration for offset claims under the EPA and a Promissory Note; (2) an order compelling arbitration in a case pending in the Circuit Court of Mobile

---

[1] The Sellers were the 23 owners named in the EPA, pursuant to which they conveyed their ownership interests in the Acquired Entities, as defined below, to HPCSP Investments. Doc. 1 at 9, 16. Lindberg names only 19 of the 23 Sellers as Defendants in this matter, *see* Doc. 1, but Lindberg has only attempted service on Cieutat.

[2] Unless otherwise noted, citations to "¶ _" refer to the Petition, Doc. 1.

County, Alabama (the "Next Step Case")[3]; and (3) an order compelling arbitration of his alleged right to offset amounts determined to be owed in the Next Step Case.[4]

Before the Court is Cieutat's motion to dismiss pursuant to Rules 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, Doc. 10, as well as Cieutat's motion to strike a sur-reply that Lindberg filed without first seeking the Court's permission, Doc. 26.  For the reasons below, Cieutat's motions are both GRANTED.

## I.    BACKGROUND

### A.  Factual Background

The following facts are based on allegations in the Petition, which the Court accepts as true for purposes of the instant motions.  *See, e.g.*, *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Lindberg is a resident of Thonotosassa, Florida, and is the "non-controlling ultimate beneficial owner of HPCSP Investments."[5]  ¶¶ 1–2.  He previously served as the

---

[3] The parties refer to the case in Mobile County as the Next Step Case because the corporate defendants in that case are entities associated under an umbrella organization called "Next Step Specialty Pharmacy, LLC."  Doc. 30 at 7.  Next Step Specialty Pharmacy, LLC is a Defendant in the Next Step Case.  Doc. 1-1 at 63.  Cieutat is one of the owners of Next Step Specialty.  Doc. 1-1 at 74.

[4] The second amended complaint in the Next Step Case includes thirteen causes of action, including the alleged misappropriation and/or use of confidential information by Cieutat and his co-defendants.  Doc. 30 at 7–9.  Plaintiffs in that case are entities operating under the umbrella HPC Specialty Infusion ("HPC"), a specialty pharmacy serving patients with blood disorders such as hemophilia.  Cieutat founded HPC in 2002 and served as CEO until his termination in 2019.  In 2018 he and other part-owners sold the business to HPCSP Investments, LLC for $61 million pursuant to the EPA, after which he allegedly formed competing companies under the "Next Step Specialty Pharmacy" umbrella.  Doc. 30 at 7–9.  Plaintiffs allege that Cieutat, along with former HPC employees or stakeholders Nicholas Shoemaker, Keitrus Clark, and Jan Wheeler—now associated with Next Step—conspired to poach HPC Specialty Infusion employees and patients in violation of various agreements.  Cieutat and the other defendants in the Next Step Case filed a counterclaim seeking declaratory judgment.  Doc. 30 at 7.  The court held a bench trial in Next Step Case on July 21, 2025.  Doc. 30 at 6.  The court found that the plaintiffs in that case failed to provide sufficient evidence to support the allegation that Cieutat or any of his co-defendants disclosed confidential information in violation of the EPA or any other agreement.  *See generally* Doc. 30.

[5] Cieutat informed the Court that Lindberg is in jail in North Carolina awaiting sentencing on two criminal cases.  Doc. 11 at 1 n.1.  The first case involves a conviction after a jury in March 2020 found Lindberg guilty of bribing the North Carolina insurance commissioner.  *United States v. Greg Lindberg et al.*, Western District of North Carolina, Case No. 5:19-cr-22 (MOC) (DCK).  The conviction was overturned on appeal on June 29, 2022 by the Fourth Circuit, which found that the district court erred by instructing the jury that an "official act"—an element of the crime of honest services fraud—was present as a matter of law.  *United States v. Lindberg*, 39 F.4th 151, 149 (4th Cir. 2022).  The case was re-tried and Lindberg was

manager of HPCSP Investments.  ¶ 11.  Cieutat, a resident of Alabama, is a signatory to the EPA and, according to the EPA, the representative[6] of the Sellers.  ¶¶ 3–4.

The parties share a complex history that began in 2018.  The Sellers, including Cieutat, sold their ownership interests in nine healthcare and pharmaceutical companies (the "Acquired Entities")[7] to HPCSP Investments pursuant to the EPA on January 19, 2018.  Docs. 1 at 16–Doc. 1-1 at 44; *see also* ¶ 12.  Lindberg signed the EPA on behalf of HPCSP Investments.  ¶ 11.  The EPA requires that all disputes arising thereunder be arbitrated under the arbitration rules of the International Chambers of Commerce.[8]  ¶¶ 5, 25.

As part of the consideration for the purchase of the Sellers' ownership interests, a separate entity, Eli Global, LLC ("Eli Global"), executed a Promissory Note in favor of the Sellers.[9]  Doc. 11 at 6–7.

Lindberg transferred control of HPCSP Investments to a trust controlled by an unidentified third-party trustee on June 3, 2021.  ¶ 15.

---

again found guilty on June 18, 2024.  In the second case, Lindberg pled guilty to securities fraud on November 12, 2024, *United States v. Greg Lindberg*, Western District of North Carolina, Case No. 3:23-cr-48 (MOC).

[6] The EPA identifies Cieutat as the Sellers' representative.  Doc. 1 at 16.  The representative is authorized to "act as the agent of Sellers for the purpose of the Transaction Documents" and to "receive from [HPCSP Investments] any and all amounts payable by [HPCSP Investments] to Sellers under … the Sellers' Note … and to allocate and distribute such payments to Sellers in such amounts, at such times and on such terms as may be separately agreed by Sellers and Sellers' Representative."  Doc. 1-2 at 11–12 (EPA §§ 8.2–8.3).

[7] The nine companies are:  HPC, LLC, Hemophilia Preferred Care of Memphis, Inc., HPC Biologicals, Inc., HPCNC, Inc., HPC Specialty RX West Virginia, Inc., HPC Specialty Rx of Kansas, Inc., Hemophilia Preferred Care of Oklahoma, Inc., HPC Specialty Rx Reed, Inc., and Hemophilia Preferred Care of Mississippi, Inc.

[8] Cieutat asserts that the claims and parties in the pending Next Step Case are not subject to any arbitration provisions.  Doc. 11 at 5.  He adds that Lindberg is not a party to the Next Step Case.  *Id.*

[9] Cieutat informed the Court that Eli Global defaulted on the Promissory Note.  Doc. 11 at 7.  As a result, the Sellers were awarded judgment on the balance owed on the Promissory Note.  *See Eli Global, LLC v. Cieutat*, 400 So. 3d 534 (Ala. 2023).  On September 21, 2022, the Mobile County Circuit Court entered summary judgment against Eli Global in the principal amount of $9,760,000.00 plus interest of $1,450,989.60.  *Id.* at 544.  Eli Global appealed the decision, but the Alabama Supreme Court affirmed the trial court's grant of summary judgment on December 1, 2023.  *Id.* at 560.

Approximately three years later, on May 8, 2024, subsidiaries[10] of HPCSP Investments—a subset of the Acquired Entities—initiated the Next Step Case against Cieutat, among other defendants who are not parties to the instant case, alleging that the defendants took actions to damage their business "and hinder [their] mission to provide necessary healthcare to [their] patients…" Doc. 1-1 at 63. Specifically, the Next Step Case complaint alleges that Cieutat violated Section 6.4 of the EPA, which required him to "hold in confidence the Confidential Information [he was provided] and … not directly or indirectly disclose, publish, or otherwise make available any of the Confidential Information to the public or to any Person." ¶ 18 (quoting Doc. 1-1 ¶ 45). The complaint in the Next Step Case also alleges that Cieutat violated this provision by receiving Confidential Information from former employees of subsidiaries of HPCSP Investments and using it to compete unfairly, including by opening competing facilities and hiring the subsidiaries' staff to steal HPCSP Investments' patients. Doc. 1-1 at 64, 69–70. Importantly, neither Lindberg nor HPCSP Investments nor Eli Global are plaintiffs in the Next Step Case. *See* Doc. 1-1 at 63.

Lindberg alleges he sent Cieutat a demand for offset against the Promissory Note on June 29, 2024, alleging Eli Global is entitled to offset the full amount of all claims against the Sellers, including all claims against Cieutat, against the balance of the Promissory Note. ¶¶ 22, 23. Cieutat argues that this assertion is incorrect—that the judgment on the Promissory Note is not subject to be offset if the Next Step Case had resulted in a judgment against Cieutat. Doc. 11 at 5. The demand for offset in the Promissory Note states as follows:

> Right of Offset. In accordance with Section 11.10 of the Purchase Agreement, [Eli Global] is authorized, at any time and from time to time, to the fullest extend permitted by Law, to set-off and apply any and all amounts payable by [Eli Global] to [Cieutat, as the Seller's

---

[10] The subsidiaries are: HPC, LLC, Hemophilia Preferred Care of Memphis, Inc., HPCNC, Inc., HPC Specialty RX West Virginia, Inc., and HPC Biologicals, Inc. They operate under the umbrella pharmacy, HPC.

> Representative] under this Promissory Note against any amounts payable by [Cieutat] to [HPCSP Investments] under Article XI of the Purchase Agreement or otherwise.  In the event of such offset, [Eli Global] will provide a notice to [Cieutat] of such setoff amount and promptly deliver a replacement Promissory Note reflecting the new principal amount owed thereunder to [Cieutat, as the Seller's Representative].  [Cieutat, as the Seller's Representative] agrees, in exchange for such replacement Promissory Note and upon receipt thereof, to return this Promissory Note to [Eli Global] for cancellation.

¶ 23 (quoting Doc. 1-1 at 47 (Promissory Note, § 5)).  According to Lindberg, Cieutat never responded to the demand for offset.  ¶¶ 24, 26.  As further discussed below, Cieutat argues that the offset provision in the Note only permits offset amounts that Cieutat owes to HPCSP Investments—and that HPCSP Investments is not a party to the Next Step Case.  Doc. 11 at 5.  Thus, Cieutat argues that even if there had been a judgment against him in the Next Step Case—and there was not—that judgment would not be subject to set off because it would not be a judgment in favor of HPCSP Investments.

Lindberg alleges that Cieutat and the other Defendants violated the terms of the EPA, causing him "substantial damages in excess of the value of the Promissory Note." ¶ 26.

### B.  Procedural History

Lindberg filed the instant action on February 4, 2025, seeking (1) an order compelling arbitration for offset claims under the EPA and Promissory Note; (2) an order compelling arbitration in the Next Step Case; and (3) and order compelling arbitration as to whether he is entitled to an offset of the amounts ultimately owed in the Next Step Case (if any).  Doc. 1.  He filed it in New York pursuant to § 12.10 of the EPA, "[t]he place of arbitration [for any and all disputes relating to the EPA] shall be New York County, New York…"  Doc. 1-1 at 16 (EPA, § 12.10 (Arbitration of Disputes))

On March 13, 2025, Lindberg filed an affidavit from process server Carol Lambeth stating that she personally served the summons and Petition on February 26, 2025 at 10:48 a.m. at Cieutat's home address.  Doc. 8.  The affidavit of service describes

the individual served as being a white male of unknown age and gray hair, weighing between 160 and 180 pounds, and measuring 6' to 6' 3". *Id.* at 1.  It includes a photograph of a vehicle with a license plate that Lindberg alleges belongs to Cieutat. *Id.* at 4; *see also* Doc. 15 at 15–16.  The affidavit also includes proof of service that Proof Technology, Inc. also mailed these documents by First Class Mail on February 27, 2025.  Doc. 8 at 3.

Cieutat filed a motion to dismiss pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure on March 26, 2025, arguing that none of the Defendants, including himself, have been properly served, the Promissory Note cannot be arbitrated because it has been fully adjudicated, Lindberg cannot compel the Next Step Case to arbitration, and compelling the issue of offset to arbitration was premature because, at the time he filed the motion to dismiss, there was no judgment in the Next Step Case.  Doc. 10; Doc. 11.  Cieutat also filed an affidavit denying receipt of service.  Doc. 12-1.

Lindberg filed his opposition to the motion on May 1, 2025, Doc. 15, and Cieutat filed his reply brief on May 29, 2025, Doc. 23.

Without first requesting leave of Court, Lindberg filed a sur-reply on Cieutat's motion to dismiss on June 3, 2025.  Doc. 24.  Subsequently, on June 12, 2025, Cieutat moved to strike Lindberg's sur-reply.  Doc. 26.

On January 27, 2026, Cieutat, with the Court's permission, filed a supplement to his motion to dismiss advising the Court that the Circuit Court of Mobile entered a judgment in Cieutat's favor in the Next Step Case, and attaching the order in the Next Step Case as Exhibit A.  Doc. 30.  The Court directed Lindberg to file a response to Cieutat's letter motion by February 3, 2026.  Doc. 31.  To date, Lindberg has failed to do so.

6

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss Pursuant to Rule 12(b)(2)

A plaintiff "opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02-cv-4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  A plaintiff "must establish the court's jurisdiction with respect to each claim asserted." *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

To meet this burden, a plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  The Court construes all the allegations in the complaint as true and resolves all doubts in its favor. *Casville Investments, Ltd. v. Kates*, No. 12-cv-6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)).  "However, [a plaintiff] may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Art Assure Ltd., LLC v. Artmentum GmbH,* No. 14-cv-3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citation omitted).

The Court may rely on additional materials outside the pleading when ruling on 12(b)(2) motions. *John Hancock Property & Casualty Insurance Co. v. Universale Reinsurance Co.*, No. 91-cv-3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008) (citations omitted).

7

### B. Motion to Dismiss Pursuant to Rule 12(b)(5)

In considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, courts look to Federal Rule of Civil Procedure 4, which governs service of process, and may also look to materials outside the complaint to determine whether it has jurisdiction. *Mende v. Milestone Technology, Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process." *Id.* (citation omitted). When a defendant challenges the sufficiency of service pursuant to Rule 12(b)(5), "the plaintiff bears the burden of proving its adequacy." *Id.* (citation omitted).

The Second Circuit has held that Federal Rule of Civil Procedure 4 is to be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (citation omitted). Thus, upon a finding that service has not been completed or is otherwise insufficient, courts have discretion to dismiss the case or simply quash the faulty service. *Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18-cv-5448 (ER), 2021 WL 185040, at *2 (S.D.N.Y. Jan. 19, 2021) (citing *Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 796 (S.D.N.Y. 2008)).

### C. Motion to Dismiss Pursuant to Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy the pleading standard under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### D. *Pro Se* Plaintiff

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir.2011), and to interpret the claims as raising the strongest arguments that they suggest. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted); *Chavis v. Chappius*, 618 F. 3d 162, 170 (2d Cir. 2010) (citing *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* complaint that "tenders naked assertion[s] devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

### III.    DISCUSSIOIN

### A. Motion to Strike

As a preliminary matter, Lindberg filed a sur-reply on June 3, 2025, which he titled "Reply Memorandum of Law in Opposition to Defendant Ronald Cieutat's Reply Memorandum in Support of Motion to Dismiss." Doc. 24. Pursuant to the Individual Practices of this Court, "[u]nless prior permission has been granted, sur-reply memoranda will not be accepted." Individual Practices, Rule 2(B)(i). Lindberg argues that, as a *pro se* litigant, he "was unaware of this requirement and filed the sur-reply in good faith to

9

address new arguments raised in Cieutat's Reply Memorandum." Doc. 27 at 1.  He adds

that the sur-reply does not prejudice Cieutat because "it responds directly to his

arguments and does not introduce new issues." *Id.* at 1–2.  However, the Court's

Individual Practices are clear as to this requirement, and *pro se* status does not exempt a

party from compliance with relevant rules of procedural law.  In any event, as discussed

below, the Court finds that if it were to consider the arguments in Lindberg's sur-reply, it

would reach the same conclusion.  In short, because Lindberg failed to comply with this

Court's Individual Practices—and because the outcome would be the same even if he

had—the Court will not consider Lindberg's sur-reply.

### B.  Service of Process pursuant to Rule 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied." *Alwand Vahan

Jewelry, Ltd. v. Lustour, Inc.*, No. 21-cv-1959 (PAE), 2021 WL 3604517, at *2 (S.D.N.Y.

Aug. 13, 2021).  To evaluate a 12(b)(5) motion, courts look to Rule 4, which governs

service of process.  Relevant here, Rule 4(e) provides that a person can be properly

served within the United States by any of the following methods:

> (A) delivering a copy of the summons and of the complaint to the
>     individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place
>     of abode with someone of suitable age and discretion who
>     resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment
>     or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Additionally, Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is
> filed, the court—on motion or on its own after notice to the
> plaintiff—must dismiss the action without prejudice against that
> defendant or order that service be made within a specified time.  But
> if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

An affidavit of service creates a presumption of proper service. *See Old Republic Insurance Co. v. Pacific Financial Services of America, Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). But this presumption can be rebutted by a defendant's sworn denial of service, provided that the defendant swears to specific facts contradicting those in the affidavit of service. *Id.* at 57–58.

When a defendant challenges service of process, the plaintiff bears the burden of proving its adequacy. *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) (internation quotation marks omitted). "Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." *Darden v. DaimlerChrysler North America Holding Corp.*, 191 F.Supp.2d 382, 387 (S.D.N.Y. 2002).

### 1. Cieutat was Not Properly Served.

Here, Cieutat contends that the affidavit of service filed by Lindberg "is false." Doc. 11 at 10. In support, Cieutat submitted an affidavit denying receipt and refuting specific facts in the affidavit of service filed by Lindberg. Doc. 12-1. In his reply, Lindberg argues that "the Court must accept [his] evidence unless patently incredible." However, the question of service is "a threshold question that must be decided before this Court can determine if it has jurisdiction to order arbitration." Doc. 23 at 6 (citing *Alwand*, 2021 WL 3604517, at *2 ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.")). Lindberg relies on *Old Republic Insurance Co.* to argue that "Cieutat's self-serving denial does not overcome this presumption without a hearing." Doc. 15 at 8.

In *Old Republic Insurance Co.*, the central issue was whether the corporate defendant was properly served before the default judgment was entered. The process server submitted a sworn affidavit of service stating that he personally served the corporation by delivering the summons and complaint to an individual who corporate security identified as an officer authorized to accept service. *Old Republic Insurance Co.*,

11

301 F.3d at 56. The corporate defendant attempted to rebut this presumption with an affidavit from its owner asserting that the individual who was served was never an officer or employee of the corporate defendant. *Id.* at 57–58. However, the court found that the defendant's affidavit did not dispute the key facts in the process server's affidavit, such as whether the individual who was served was identified by company security as a corporate officer or whether he was actually served with the summons. *Id.* at 58. Because the defendant failed to present specific facts contradicting the process server's account, the court held that no evidentiary hearing was required and that service was valid. *Id.* at 58–59.

On the other hand, in *Goldman v. Weisman*, this Court determined that a defendant's affidavit that included "specific facts" that contravened the facts included in the affidavit of service "successfully rebutted any presumption of proper service." No. 23-cv-09602 (ER), 2025 WL 448328, at *3 (S.D.N.Y. Feb. 10, 2025) (citing *Old Republic Insurance Co.*, 301 F.3d at 57). In *Goldman*, the affidavit of service describes the individual served as being in his 50's, weighing approximately 160 pounds, and measuring 5 feet and 10 inches. *Id.* The defendant in that case responded, in an affidavit, that he was in his 40's weighed approximately 230 pounds, and was 6 feet and 4 inches tall. *Id.* The affidavit of service stated that the defendant was served in his office, but, according to defendant's affidavit, he was served on Rosh Hashanah and, as an observant Orthodox Jew, he was at the synagogue so he could not have been served in his office, which was closed for the holiday. *Id.* Considering all of this, this Court concluded that service was inadequate. *Id.*

The same outcome is compelled here. Lindberg filed an affidavit from process server Carol Lambeth stating that she personally served the summons and Petition on February 26, 2025 at 10:48 a.m. at Cieutat's home address. Doc. 8. The affidavit of service describes the individual served as being a white male of unknown age and gray hair, weighing between 160 and 180 pounds, and measuring 6' to 6' 3". *Id.* But, as

Cieutat asserts in his affidavit, neither he nor anyone else was at his home on February 26, 2025. Doc. 12-1 ¶¶ 3, 4. He did, however, receive a phone call from a woman who did not disclose her name, claiming that she had a package to deliver to him. *Id.* ¶ 3. Cieutat told the woman on the phone that he did not know when he would return home. *Id.* He adds that he was "expecting delivery of some [boat] parts," and incorrectly assumed that the call was about that delivery. *Id.*; *see also* Doc. 11 at 10 (explaining that the "some parts" Cieutat was expecting were "boat parts"). According to Cieutat, no one else was at his home on that day. Doc. 12-1 ¶ 4.

Cieutat's affidavit further states that, at the caller's request, he provided his height, weight, and hair color. *Id.* The affidavit explains that when he returned home, there was a box left on his doorstep, which he later realized contained the complaint in this matter. *Id.* ¶ 5. Lastly, he notes that no one handed him anything, that he did not see who delivered the box, nor appreciate that the contents contained the complaint because, since his incarceration, Lindberg has sent him multiple packages of documents that he has disregarded. *Id.* Cieutat adds that on March 3, 2025, he received the complaint again, this time by United States mail, though not certified mail. *Id.* ¶ 6. He was not home when the package was delivered and therefore did not sign for it—nor does Lindberg argue otherwise—it was left in his mailbox. *Id.* There was no return receipt. Doc. 11 at 12.

Lindberg argues that the affidavit prepared by the process server "confirms that [she] personally handed the summons and petition to an individual identified as [] Cieutat," and that "Cieutat's self-serving denial does not overcome this presumption without a hearing." Doc. 15 at 8. However, because Cieutat's affidavit includes "specific facts" that contravene those alleged in the affidavit of service, the Court finds that Cieutat has successfully rebutted any presumption of proper service. *See Old Republic Insurance Co.*, 301 F.3d at 58 (noting that "nothing in [the] affidavit [filed by the owner of the Defendant company] refutes 'specific facts' established by the process server.

[Defendant] did not dispute that company security identified [a key individual] as a corporate officer, that it was reasonable for the process server to rely on the directions of company security, or that [the aforementioned key individual] was actually served with the summons.").

Furthermore, Lindberg argues that mailing the Petition via U.S. mail on March 3, 2025 "provides additional support for actual notice, although such notice is not required under [Alabama Rule of Civil Procedure 4(e)(2)(A)] for personal delivery." Doc. 15 at 9. However, the case on which Lindberg relies as support makes it clear that service in Alabama "shall include delivery by a process server and service by certified mail." *Gaudin v. Collateral Agency, Inc.*, 624 So. 2d 631, 633 (Ala. Civ. App. 1993). Lindberg has failed to do either. Accordingly, the Court finds that Cieutat was not properly served.

2. *None of the Other Defendants were Properly Served.*

Additionally, Cieutat argues that none of the other Defendants were ever served. Doc. 11 at 13–14. Pursuant to Rule 4(e)(2)(C), an individual may be served by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). "Rule 4(e)(2)(C) requires a clear and specific appointment of the person served as one authorized to accept service of process." *Tuebor Reit Sub LLC v. Paul*, No. 19-cv-8540 (JPO), 2020 WL 4897137, at *4 (S.D.N.Y. Aug. 19, 2020) (internal quotation marks omitted).

Here, Lindberg argues that Cieutat had "broad agency authority" because section 8.3 of the EPA designates Cieutat as the Sellers' Representative, authorized to "receive from [HPCSP Investments] any and all amounts payable by [HPCSP Investments] to Sellers under … the [Promissory] Note." Doc. 15 at 9 (quoting Doc. 1-2 at 12). According to Lindberg, this clause "implies that [Cieutat] is authorized to accept service on behalf of all Sellers ([which include] the Defendants in this case) for disputes arising from the Agreement." Doc. 15 at 9. However, nothing in the EPA suggests that Cieutat,

14

as the Sellers' Representative for certain defined purposes,[11] was authorized to accept service of process on behalf of the other Defendants. And Lindberg's argument that authority to accept service of process on behalf of the other Individual Defendants may be "implied" is contrary to the Federal Rules of Civil Procedure. *Tuebor Reit Sub*, 2020 WL 4897137, at *4 ("Rule 4(e)(2)(C) requir[es] a clear and specific appointment of the person served as one authorized to accept service of process." (internal quotation marks and citations omitted)).

Lindberg adds that, at a minimum, service on Cieutat satisfies the notice requirement for all other Defendants, and that any defects can be "cured by re-service if necessary, not dismissal." Doc. 15 at 10. However, as Cieutat argues, "Lindberg has made no attempt to properly serve Cieutat since Cieutat's filing of the [instant motion]," nor has he attempted to serve the other Defendants. Doc. 23 at 8. Pursuant to Rule 4(m) of the Federal Rules of Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Given that Lindberg has been aware of Cieutat's deficient service argument since March 26, 2025, but has nevertheless neglected to perfect service, the Court is inclined to dismiss the action.

Accordingly, Cieutat's motion to dismiss for insufficient service of process is GRANTED without prejudice.

### C. Personal Jurisdiction pursuant to Rule 12(b)(2)

Failure to perfect service is sufficient in itself to sustain dismissal of this action. However, as set forth below, dismissal may also be predicated on lack of personal jurisdiction over the defendants and Lindberg's failure to state a claim.

---

[11] Pursuant to the EPA, the Sellers' Representative has the authority to "take all actions and make all decisions on behalf of, and to bind, all [sellers]," the power and authority to receive from payments from the HPCSP Investments, and well as to pay HPCSP Investments any amounts due. Doc. 1-2 at 11–12.

15

The Court further finds that even if service had been proper, personal jurisdiction over the Defendants is lacking.  Lindberg argues that this Court has diversity jurisdiction over the Defendants pursuant to 28 U.S.C. § 1332 and New York's long-arm statute, CPLR § 302(a), because they are signatories to the EPA.

Lindberg is a resident of Florida.  ¶ 1.  Cieutat is a resident of Alabama.  Doc. 8.  The complaint states that "Respondents are residents of Alabama," ¶ 3, and Cieutat does not allege that any of them reside in Florida so as to destroy diversity jurisdiction.  Lindberg adds that the matter in controversy exceeds $75,000.  ¶ 7.  Accordingly, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

Nevertheless, Cieutat argues that this Court lacks personal jurisdiction because two of the Defendants in the Next Step Case are residents of Tennessee and Alabama and neither consented to arbitration of the claims nor were they parties to the EPA.  Doc. 11 at 18.  Additionally, none of the other entities in the Next Step case were parties to the EPA and did not agree to arbitration of the claims against them.  *Id.*  Cieutat additionally argues that the Next Step plaintiffs only signed the EPA "as to Section 7.10'"—which pertains to timely elections—of the EPA.  Doc. 1-2 at 50; *see also* Doc. 11 at 19.  He adds that "even if these plaintiffs were subject to the arbitration provision, they waived the right to arbitration by filing a lawsuit in Alabama."  *Id.*

Lindberg is correct in that "[t]he parties involved in the Next Step Case are not necessary for this arbitration," as the instant case "involves only Lindberg and the Defendants."  Doc. 15 at 26.  Here, Cieutat and the other Defendants signed the EPA, which contains an arbitration clause that covers "any and all disputes arising out of, relating to, or in connection with [the EPA]," "dictates that "*[t]he place of arbitration shall be New York County, New York*," and states that the parties "waive any defense of lack of personal jurisdiction … in any legal proceedings concerning or arising out of any such arbitration."  Doc. 1-1 at 16 (EPA, § 12.10) (emphasis added).  However, the arbitration clause only applies to "legal proceedings concerning or arising out of any such

16

arbitration." *Id.* Accordingly, the arbitration clause does not apply to the instant case, and the Court therefore determines that it lacks personal jurisdiction over any out-of-state defendants.

### D. Failure to State a Claim upon Which Relief Can be Granted Pursuant to Rule 12(b)(6)

#### 1. *Offset Arbitration Pursuant to the Promissory Note*

Even if Cieutat or any of the other Defendants had been properly served, Lindberg's Petition would still be dismissed.

Lindberg's Petition seeks arbitration for offset claims under the Promissory Note and EPA. Doc. 15 at 16 (clarifying relief sought). The Right to Offset provision in the Promissory Note, in relevant part, provides:

> [Eli Global] is authorized, at any time and from time to time, to the fullest extend permitted by Law, to set-off and apply any and all amounts payable by [Eli Global] to [Cieutat, as the Seller's Representative] under this Promissory Norte against any amounts payable by [Cieutat] to [HPCSP Investments] under Article XI of the Purchase Agreement or otherwise.

Doc. 1-1 at 47 (Promissory Note, § 5). According to Lindberg, because the EPA's arbitration clause covers "any and all disputes arising out of, relating to, or in connection with this Agreement," Doc. 1-1 at 16 (EPA, § 12.10), his claims involve matters covered by the EPA and are therefore arbitrable, Doc. 15 at 16–17. Lindberg further asserts that his participation litigating Eli Global's default on the Promissory Note in a separate case[12] does not amount to waiver of his rights to arbitration because he did not initiate the case and there is no showing of prejudice since the Defendants in this case opted for the litigation. Doc. 15 at 17.

---

[12] The case the parties reference involves Eli Global defaulting on the Promissory Note, and the Court awarding the Sellers a judgment on the balance owed on the Promissory Note. *Eli Global v. Cieutat*, 400 So. 3d 534 (Ala. 2023).

However, as Cieutat argues, "[n]othing in [the offset] provision allows *Lindberg* to offset Eli Global's liability under the [Promissory] Note against *mere allegations* of amounts owed by Cieutat to *business entities who are not HPCSP Investments*." Doc. 23 at 8 (emphasis in original). Here, "only amounts payable to HPCSP Investments [would have resulted] in an offset," but since HPCSP Investments is not a party to the Next Step Case, there was never going to be any setoff. *Id.* at 9.

Additionally, even if the trial court in the Next Step Case had reached a different conclusion, Lindberg does not have standing to assert claims on behalf of HPCSP Investments. HPCSP Investments, not Lindberg, would have to claim that Cieutat owed amounts payable to it. Lindberg admits that he "has had no control over HPCSP Investments, LLC or any of its subsidiaries" since June 3, 2021. ¶ 15. In short, "Lindberg's pleadings fail to allege a claim of offset that could be arbitrated." Doc. 23 at 10.

### 2. *Next Step Case Arbitration*

The Petition requests arbitration regarding "[Lindberg's] demand for offset" against the Promissory Note due to alleged breaches of the EPA by Defendants. ¶¶ 20–27. Lindberg argues that he "does not aim to arbitrate the Next Step Case itself; rather, [the Petition] uses the allegations in that case as evidence of breaches that justify an offset." Doc. 15 at 17–18. In other words, he asks the Court to "consider the Next Step case … along with the arbitration clause in the [EPA] and the offset provisions of the promissory note attached to the complaint" in deciding the present case. Doc. 15 at 22. However, as Cieutat points out, "in [Lindberg's] response to the [m]otion to [d]ismiss, he states in one breath that the Next Step Case is the basis for the alleged breaches of the [EPA] and the damages that stem from it support his claim of offset, and in the next breath he states that whether the Next Step Case proceeds is irrelevant." Doc. 23 at 10 (citing Doc. 15 at 23). Both cannot be true.

18

In any case, given that neither Lindberg nor Eli Global are parties to the Next Step Case, there is no judgment in that case that can possibly be used to offset amounts due by Cieutat to either of them. Accordingly, this case may also be dismissed for failure to state a claim upon which the Court may grant relief.

3. *Arbitration is Not Mandated Pursuant to the FAA*

Lastly, Lindberg argues that the FAA requires that the matter be sent to arbitration provided an arbitration clause exists and no other legal constraints foreclose arbitration. Doc. 15 at 27. Lindberg filed the instant action in New York pursuant to § 12.10 of the EPA, "[t]he place of arbitration [for any and all disputes relating to the EPA] shall be New York County, New York…" Doc. 1-1 at 16 (EPA, § 12.10 (Arbitration of Disputes)).

However, Lindberg has failed to identify a claim that is subject to arbitration. In fact, "only amounts owed to HPCSP Investments can offset the Note, and HPCSP Investments is not a party to the Next Step Case and has not otherwise asserted any claims against Cieutat. " Doc. 23 at 5. Additionally, as stated above, Lindberg lacks standing to assert claims of HPCSP Investments that are needed to establish an offset amount. *See* Doc. 23 at 11. Accordingly, this argument, too, fails.

## IV.    CONCLUSION

For the foregoing reasons, Cieutat's motion to dismiss is GRANTED and the Petition is DISMISSED without prejudice. The Clerk of the Court is respectfully directed to strike Doc. 24, and terminate the motions, Doc. 10 and 26.

It is SO ORDERED.

Dated:    March 25, 2026
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

19